FILED

AUG 25 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. EW-14-1302-TaPaJu |
| ) | |
| SHUMATE SPOKANE, LLC, ) | Bk. No. 09-05081-FLK11 |
| ) | |
| Debtor. ) | Adv. No. 11-80035-FLK |
| _____ ) | |
| ) | |
| GEORGE F. LATUS; MICHAEL ) | |
| WILHITE; MATT THOMASSON; ) | |
| ARIC MUSE, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| SHUMATE SPOKANE, LLC; JOHN ) | |
| MICHAEL SHUMATE; JENNIFER D. ) | |
| SHUMATE; HARLEY-DAVIDSON ) | |
| CREDIT CORPORATION; GE CAPITAL) | |
| FRANCHISE FINANCE CORPORATION,) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Submitted Without Oral Argument[**] on July 23, 2015
at Pasadena, California

Filed – August 25, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of Washington

Honorable Frank L. Kurtz, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

[**] After examination of the briefs and record, in an order entered December 15, 2014, the Panel unanimously determined that oral argument was not needed for this appeal and granted appellants' motion for submission on the briefs and appellate record. See Fed. R. Bankr. P. 8019(b); 9th Cir. BAP Rule 8019-1.

Appearances:    Timothy J. Carlson of Carlson Boyd, PLLC on brief for Appellants Aric Muse, Matt Thomasson and Michael Wilhite; Dianna J. Caley of Wong Fleming, PC on brief for Appellee Harley-Davidson Credit Corporation; Jeffrey T. Wegner and Lisa M. Peters of Kutak Rock LLP on brief for Appellee GE Capital Franchise Finance Corporation

Before:   TAYLOR, PAPPAS, and JURY, Bankruptcy Judges.

**INTRODUCTION**[1]

This is the second time we consider this appeal, which arises from the bankruptcy court's judgment against appellants Michael Wilhite, Matt Thomasson, and Aric Muse in their adversary proceeding for the recovery of wages and employee benefits.  Previously, we determined that the order subject to appeal was not final and dismissed the appeal for lack of jurisdiction.  See BAP No. EW-12-1249-TaPaJu, ECF No. 57.  The judgment is now final, and we now AFFIRM.

**FACTS**[2]

The Debtor filed its chapter 11 bankruptcy case on September 9, 2009.  Before filing, the Debtor operated

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]  We exercise our discretion to independently review documents filed in the adversary proceeding and the underlying bankruptcy case.  See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

motorcycle sales and repair shops licensed and franchised through an entity related to Harley-Davidson Motor Company. On June 10, 2010, the bankruptcy court entered an order approving the sale of substantially all of the Debtor's assets ("Sale Order"). The Sale Order provided for payment in full of the secured claim of Harley-Davidson Credit Corporation ("Harley-Davidson"), less a $33,333 carve-out and surcharge, and payment of $400,000 to GE Capital Franchise Finance Corporation ("GEFF") on account of its secured claim, again less a $33,333 carve-out and surcharge.[3]

According to the Affidavit of Daniel Small, the GEFF Vice-President directly responsible for GEFF's claims against the Debtor, the business appeared to be inoperative at least six months before the sale. Monthly Operating Reports filed by the Debtor are consistent with this assertion as they routinely reported that the Debtor had no employees, $0 in sales revenue, and $0 in repair revenues.

On March 2, 2011, the Appellants commenced an adversary proceeding naming five defendants: the Debtor, John Michial Shumate, Jennifer Shumate, GEFF, and Harley-Davidson. They

---

[3] In addition, the buyer agreed to pay into escrow an additional $33,333, to be combined with the surcharge amounts from GEFF and Harley-Davidson and to pay the "reasonable and necessary costs and expenses of disposing of the collateral that benefitted the two secured creditors through the sale process" pursuant to § 506(c). The Appellants assert on appeal that they received no payment from the sale proceeds. On September 20, 2011, however, the bankruptcy court entered a Stipulated Order on Motion for Disbursement of "Carve Out" Contribution Funds, which includes payments as follows from the surcharge proceeds: $8,024.30 to Mike Wilhite, $8,136.25 to Matt Thomasson, and $15,476.33 to Aric Muse, with such payments to be credited against their post-petition compensation.

3

amended their complaint almost immediately. The First Amended Complaint ("FAC") alleged that the Debtor continued to employ them postpetition in managerial positions and stated "that their help was necessary to keep the business operating so that it could be sold as a going concern which would significantly enhance the purchase price . . . ." First Am. Compl. ¶¶ 26-27. It also alleged that the Appellants were not paid any wages, overtime, retirement, or other benefits for postpetition work that provided benefit to GEFF and Harley-Davidson.

The FAC alleged claims for relief including recovery under: (1) § 506(c); (2) quantum meruit or unjust enrichment theories; and (3) the Fair Labor Standards Act. The Appellants' prayer for relief, as relevant to this appeal, sought to collect the judgment directly from GEFF and Harley-Davidson.

Both GEFF and Harley-Davidson filed motions to dismiss under Civil Rule 12(b)(6) as to all claims asserted in the FAC. GEFF generally argued that, other than identifying GEFF as a corporation doing business in Washington, the FAC did not refer to GEFF in a factual allegation and, in particular, failed to allege that GEFF employed or had any contact with the Appellants. As to the first claim, GEFF also argued that the Appellants lacked standing to seek a § 506(c) surcharge and that the bankruptcy court lacked subject matter jurisdiction as a result of the standing deficiency and because the collateral allegedly subject to § 506(c) surcharge was no longer property of the estate.

Harley-Davidson raised similar arguments and further

4

asserted that the Appellants were collaterally estopped from seeking a surcharge based on the final Sale Order, which allocated sale proceeds. It also argued that the FAC did not adequately plead a valid quantum meruit or unjust enrichment claim as Harley-Davidson was a fully secured creditor entitled to payoff of its secured claim.

The Appellants next moved for leave to amend the FAC. Following hearings and supplemental briefing on the collective motions, the bankruptcy court dismissed the first claim under § 506(c) with prejudice. It concluded that because the Debtor sold GEFF and Harley-Davidson's collateral free and clear, it was no longer part of the bankruptcy estate and, thus, could not be surcharged.

As to the remaining three claims, the bankruptcy court granted the Appellants' motion for leave to amend. It advised the parties, however, that it would treat the pending motions to dismiss as motions for summary judgment, so that it could consider material outside the pleadings.

Pursuant to deadlines established by the bankruptcy court, the Appellants filed a Second Amended Complaint ("SAC"), and GEFF and Harley-Davidson answered. Both sides filed additional declaratory evidence, and GEFF and Harley-Davidson filed further legal argument. At a specially set hearing, the bankruptcy court orally stated its ruling on the record.

First, the bankruptcy court admonished the Appellants for renewing their § 506(c) claim in the SAC and, once again, dismissed it. It then granted summary judgment in favor of GEFF and Harley-Davidson as to the remaining claims. It found

5

that GEFF and Harley-Davidson submitted admissible evidence sufficient to shift the burden on summary judgment to the Appellants, and concluded that the Appellants did not meet their burden to demonstrate the existence of specific and material disputes of fact to be resolved at trial.

The bankruptcy court found that the undisputed evidence established that the § 363 sale generated substantially less than the secured debt. It also found that the Appellants did not meet their burden to refute the evidence that the § 363 sale liquidated the assets of an inoperative business or that the Appellants were neither employed by nor in communication with GEFF and Harley-Davidson.

The bankruptcy court entered an order on May 1, 2012, and the Appellants appealed. This Panel dismissed the appeal after concluding that the May 1, 2012 order was not a final judgment because the claims against the remaining three non-moving defendants were unresolved. Likewise, it determined that leave to appeal was not appropriate. Eventually, the Appellants obtained a bankruptcy court order dismissing the remaining claims against the Debtor, John Michial Shumate, and Jennifer Shumate.

On June 10, 2014, the Appellants appealed from the now final judgment and commenced the present appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

ISSUES

1. Whether the bankruptcy court erred when it dismissed the Appellants' § 506 claim.

2. Whether the bankruptcy court erred when it granted summary judgment in favor of GEFF and Harley-Davidson on the quantum meruit and unjust enrichment claims.

3. Whether the bankruptcy court erred when it granted summary judgment in favor of GEFF and Harley-Davidson on the Fair Labor Standards Act claim.[4]

**STANDARDS OF REVIEW**

We review both the bankruptcy court's grant of the motion to dismiss under Civil Rule 12(b)(6) and its grant of summary judgment de novo. See Johnson v. Fed. Home Loan Mortg. Corp., --- F.3d ----, 2015 WL 4231519, at *2 (9th Cir. July 14, 2015) (motion to dismiss); Bear Valley Mut. Water Co. v. Jewell, 790 F.3d 977, 986 (9th Cir. 2015) (summary judgment).

**DISCUSSION**

**A. Motions to Dismiss the First Claim**

    **1. Legal standards for a motion to dismiss under Civil Rule 12(b)(6)**

A motion to dismiss under Civil Rule 12(b)(6) (incorporated into adversary proceedings by Rule 7012(b)) challenges the sufficiency of the allegations set forth in the complaint and "may be based on either a lack of a cognizable legal theory or  . . . sufficient facts alleged under a

---

[4] The Appellants do not appeal from the bankruptcy court's grant of summary judgment in favor of GEFF and Harley-Davidson as to any of the other claims in the SAC.

cognizable legal theory." Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citation omitted). The court's review is limited to the allegations of material facts set forth in the complaint, which must be read in the light most favorable to the non-moving party, and together with all reasonable inferences therefrom, must be taken to be true. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

Facts properly subject to judicial notice may be used to establish that the complaint does not state a claim for relief. Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007). Court documents filed in the underlying bankruptcy case are subject to judicial notice in related adversary proceedings. In re E.R. Fegert, Inc., 887 F.2d at 957-58.

The plaintiff must provide grounds for its entitlement to relief, which requires more than labels and conclusions; and the actions must be based on legally cognizable rights of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court need not accept as true threadbare recitals of a cause of action's elements, supported by mere conclusory statements; and the plausibility of a claim is context-specific on review of which the court may draw on its experience and common sense. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The two-part analysis set out in Iqbal requires the court to first identify the conclusory pleadings, which are not entitled to the assumption of truth. See Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Then, after

8

discounting those pleadings, if there remain well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief.  Id.

### 2.   Section 506(c) claim

Both GEFF and Harley-Davidson argued, among other things, that the Appellants lacked standing to prosecute a § 506(c) surcharge claim.  The bankruptcy court dismissed the § 506(c) claim, with prejudice, on this ground and others.

In pertinent part, § 506(c) states, "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving . . . such property to the extent of any benefit to the holder of such claim."  The Appellants do not expressly argue that they have statutory standing.  Instead, they argue that the bankruptcy court should have granted them derivative standing, presumably under § 105(a).  We disagree.

The Supreme Court held in Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., that Congress granted the power to seek a § 506(c) surcharge only to the trustee (and in chapter 11 cases, the debtor-in-possession).  530 U.S. 1, 6 n.3 (2000) (citing 11 U.S.C. § 1107(a)).  The bankruptcy court's powers are limited by the clear language of the Bankruptcy Code, and the general provisions of § 105(a) may not be used to expand standing to seek a § 506(c) surcharge.  See Law v. Segal, 134 S. Ct. 1188, 1194 (2014) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the

9

Bankruptcy Code.") (citation omitted); <u>Hamilton v. Lumsden (In re Geothermal Res. Int'l, Inc.)</u>, 93 F.3d 648, 651 (9th Cir. 1996) ("[T]he court cannot, in the name of its equitable powers, ignore specific statutory mandates").

As the Appellants lacked standing to seek a surcharge against GEFF and Harley-Davidson, they failed to state a claim upon which relief could be granted. Therefore, the bankruptcy court appropriately dismissed the § 506(c) claim. We need not address the Appellants' alternative arguments regarding surcharge.

**B. Summary Judgments on the Second and Fourth Claims**

    **1. Legal standards for summary judgment under Civil Rule 56**

On a Civil Rule 12(b)(6) motion, if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Civil Rule 56 (incorporated into adversary proceedings by Rule 7056), and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d). The party against whom summary judgment was entered under these circumstances must have been "fairly apprised that the court would look beyond the pleadings" and treat the motion to dismiss as one for summary judgment. <u>Olsen v. Idaho St. Bd. of Med.</u>, 363 F.3d 916, 922 (9th Cir. 2004) (internal quotation marks and citations omitted).

Here, the bankruptcy court appropriately advised the parties of its intention to treat the motions to dismiss as to the remaining claims as motions for summary judgment, so as to

10

consider matters outside the pleadings. It then set a schedule for the parties to file additional documents and to present additional argument.

Civil Rule 56(c) provides that a party may move for summary judgment when there is no genuine dispute of material fact and the moving party is entitled to a judgment as a matter of law. A "genuine dispute" arises where, based on the evidence presented, a fair-minded trier of fact could return a verdict in favor of the nonmoving party on the issue in question. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991). A "material fact" is one for which the resolution could affect the outcome of the case. Anthes v. Transworld Sys., Inc., 765 F. Supp. 162, 165 (D. Del. 1991).

All justifiable inferences must be drawn in favor of the non-moving party. Anderson, 477 U.S. at 255. Likewise, all evidence must be viewed in the light most favorable to the non-moving party. Lake Nacimiento Ranch v. San Luis Obispo Cty., 841 F.2d 872, 875 (9th Cir. 1987). A party responding to a summary judgment motion may not rest upon mere allegations or denials in its pleadings. Rather the party must present admissible evidence showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(e).

If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

11

As to the quantum meruit and unjust enrichment claims, the bankruptcy court found that, "in the face of the denials contained in the moving defendants' affidavit, the [Appellants] provide[d] conclusionary statements but [did] not provide specific facts necessary to sustain their burden." Hr'g Tr. (Feb. 3, 2012) at 14:20-23. As to the Fair Labor Standards Act claim, it similarly found that the Appellants had "not come forward with specific facts showing that the defendants qualif[ied] as an employer." Id. at 22:10-12. We agree in both instances.

**2. Quantum meruit and unjust enrichment claims**

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." Young v. Young, 191 P.3d 1258, 1262, 164 Wash. 2d 477, 484 (2008). There are three elements that must be established to prevail on such a claim: (1) benefit conferred upon defendant by plaintiff; (2) defendant's knowledge and appreciation of the benefit; and (3) defendant's retention or acceptance of the benefit under circumstances making it inequitable for defendant to retain the benefit without payment. Id. at 1262, 484-85.

Quantum meruit "is the method of recovering the reasonable value of services provided under a contract implied in fact." Id. at 1262, 485. The elements of an implied in fact contract are: (1) defendant requested the work; (2) plaintiff expected payment for the work; and (3) defendant knew or should have known that the plaintiff expected payment for the work. Id. at 1263, 486.

12

Here, both GEFF and Harley-Davidson submitted affidavits denying knowledge of either the Appellants' alleged services or that the Appellants looked to GEFF or Harley-Davidson for payment. They likewise denied that the Appellants contacted or communicated with them in any way. The bankruptcy court found that the Appellants did not show that either GEFF or Harley-Davidson communicated with them and that the Appellants conceded in their affidavits that the Debtor hired them in managerial positions and induced them to work by promising to pay them for their work. The Appellants did not allege specific communications by either GEFF or Harley-Davidson that could be reasonably construed as a promise to pay them for their work or services as employees of the Debtor. The record, thus, supports the bankruptcy court's conclusion.

The Appellants argue that their work allowed GEFF and Harley-Davidson to purchase the Debtor as a going concern. However, the bankruptcy court appropriately considered the Debtor's monthly operating reports, which reflected no employees, no receipts, and no ongoing business in the months leading up to the § 363 sale. The Appellants did not meet their burden to refute the information in the reports or to show that the Sale Order sold the Debtor's business as a going concern.

As to the unjust enrichment claim, the unrefuted evidence established that the sale of the Debtor's assets generated substantially less than the secured debt. Neither GEFF nor Harley-Davidson received more than they were due.

Instead, the Appellants did nothing more than provide

13

conclusory statements in support of their unjust enrichment and quantum meruit claims. Summary judgment was appropriate as they failed to show the existence of a genuine dispute of material fact to be resolved at trial.

### 3. Fair Labor Standards Act claim

The Fair Labor Standards Act provides that "[e]very employer shall pay . . . [its] employees" no less than minimum wage. 29 U.S.C. § 207(a)(1). The FLSA also provides that "no employer should employ any of its employees . . . for a workweek longer than forty hours unless such employee receives" overtime compensation. Id. Under section 215(a)(2) of the act, it is "unlawful to fail to comply with the minimum wage and overtime pay requirements" of the FLSA. Individual employees may bring a private cause of action against their employer if their employer violates the provisions. Id. "By its terms, section 16(b) applies only to employers," where "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." USM Workers' Comm. v. Decker (In re USM Tech. Corp.), 158 B.R. 821, 824 (Bankr. N.D. Cal. 1993) (citation omitted).

The Appellants, as private claimants under the FLSA, had the burden of proving that they were employed by GEFF or Harley-Davidson and performed work for which they were not properly compensated. See Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90 (1942). Again, they presented no evidence that either GEFF or Harley-Davidson qualified as their employer or promised to pay their wages.

The Appellants do not question this conclusion; rather,

14

they argue they possessed rights to recover from collateral held by GEFF and Harley-Davidson under the theory that such collateral included "hot goods." The Appellants argue that the statute is broadly applied, as it states that "it shall be unlawful for any person . . . to transport, or sell in commerce . . . any goods . . . the production of which" was in violation of the FLSA. 29 U.S.C. § 215(a)(1). However, even broadly construed, the Appellants offered no specific evidence to support their argument that any of Debtor's inventory or assets were produced by the Appellants or otherwise met the definition of "hot goods."

Further, even if there was a sale of "hot goods," the Appellants would not have a right to collect from the proceeds of the assets that were sold. See, e.g., In re USM Tech. Corp., 158 B.R. at 825-27 (unpaid workers did not have rights in the proceeds of "hot goods").

Finally, the Debtor's assets, GEFF and Harley-Davidson collateral, were sold pursuant to the § 363 sale. The Appellants did not appeal from the Sale Order, and it is final.

It is worth emphasizing that GEFF and Harley-Davidson agreed to carve outs from the sale proceeds that directly benefitted the Appellants as part of the Sale Order. To the extent the Appellants' "hot goods" argument is a collateral attack on this order, it appropriately fails.

The Appellants failed to establish the existence of a genuine dispute of material fact as to the Fair Labor Standards Act claim and summary judgment on this claim was appropriate.

**CONCLUSION**

Based on the foregoing, we AFFIRM.