**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 31 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JAMES MCCALMONT, a married man; KATHERINE MCCALMONT, a married woman, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION, <br><br> Defendant-Appellee. | No. 14-16990 <br><br> D.C. No. 2:13-cv-02107-HRH <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
H. Russel Holland, District Judge, Presiding

Argued and Submitted October 20, 2016
San Francisco, California

Before: BEA and IKUTA, Circuit Judges, and RESTANI, Judge.[**]

James and Katherine McCalmont appeal the district court's order granting a

motion to dismiss for failure to state a claim brought by the Federal National

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Mortgage Association (Fannie Mae). We have jurisdiction under 28 U.S.C. § 1291.

The McCalmonts' complaint contains sufficient plausible allegations to raise the reasonable inference that Fannie Mae "regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties," and therefore qualifies as a "consumer reporting agency" under 15 U.S.C. § 1681a(f). Specifically, it alleges that Fannie Mae assembles various reports containing consumer credit information, stating that "[t]hrough the DU system, Fannie Mae obtains an applicant's three-file and/or 'tri-merge' consumer report from either a reseller of credit information, or one or more of the three (3) major credit repositories" and "Fannie Mae's DU system assembles reviews, assesses and evaluates all of the information it obtains from the lender and/or broker, and the consumer reporting agencies and/or resellers, including the consumer reports, and generates its own report, known most frequently as the Desktop Underwriting Findings report ('DU Findings Report')." The complaint also makes the plausible allegation that Fannie Mae evaluates the consumer credit information, stating that "the DU Findings Report contains findings, conclusions, comments and results reached by Fannie Mae concerning the applicant's credit and his or her 'eligibility'

2

for loan purchase by Fannie Mae." The complaint also contains plausible allegations that Fannie Mae furnishes consumer reports to third parties, stating that Fannie Mae "compiles, issues, maintains and sells its DU Findings Reports to lenders and/or brokers on a nationwide basis." We reject Fannie Mae's argument that because its licensing agreement makes it an agent of each lender licensed to use the DU system, Fannie Mae is providing reports to its principals, not to third parties. Even if we deem the DU system licensing agreement to be incorporated into the complaint by reference, its ambiguous statement that Fannie Mae is deemed to be the agent of the lender for certain limited purposes at most raises a triable issue of fact that cannot be resolved at the motion to dismiss stage.

Second, the McCalmonts' complaint plausibly alleges that the DU Findings Report qualifies as a "consumer report" for purposes of 15 U.S.C. § 1681a(d). In stating that the report communicates information regarding prior short sales or prior foreclosures and that the provision of erroneous information regarding prior foreclosures results in consumers being unable to obtain mortgage financing, it plausibly alleges that information provided by the DU Findings Report "bear[s] on a consumer's credit worthiness, credit standing, credit capacity, character, general

3

reputation, personal characteristics, or mode of living."[1]  *See* 15 U.S.C. § 1681a(d)(1).

We reject Fannie Mae's argument that it is not a consumer reporting agency as a matter of law based on the language of 15 U.S.C. § 1681g(g)(1)(B)(ii), which states that a mortgage lender should disclose a credit score generated by Fannie Mae using the procedures applicable to credit scores not obtained from consumer reporting agencies.  Reading this section in context, we see no indication that Congress intended to exclude Fannie Mae from the definition of "consumer reporting agency," and we decline to read such an intent into the statute.

Finally, the McCalmonts' complaint alleges facts sufficient to raise a plausible inference that Fannie Mae failed to "follow reasonable procedures to assure maximum possible accuracy" of the DU Findings Report in violation of 15 U.S.C. § 1681e(b).  The complaint alleges that none of the McCalmonts' lenders reported that the McCalmonts had "been through a foreclosure," that "a previous short sale has wrongly been flagged by Fannie Mae as a foreclosure," and that this

---

[1] Contrary to the dissent, a bank or lender that declines to make or purchase a loan "and gives reasons for its decision," Dissent at 2, cannot meet the definition of "consumer reporting agency" unless such bank or lender "regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties."  15 U.S.C. § 1681a(f).

4

error was the result of the DU system's inability to distinguish between foreclosures and other adverse credit events.

**REVERSED AND REMANDED**.

*McCalmont v. FNMA*, No. 14-16990

BEA, Circuit Judge, dissenting:

I dissent from the majority for two reasons. First, the Desktop Underwriter

Findings Report (DU Findings Report) does not communicate information about

the McCalmonts; it states only whether the *loan* the McCalmonts sought is eligible

for purchase by the Federal National Mortgage Association (Fannie Mae).[1]

Therefore, the DU Findings Report is not a "consumer report" under the Fair

Credit Reporting Act (FCRA).[2] The majority disagrees, and holds that the facts

alleged in the complaint raise a plausible inference that the DU Findings Report

communicates information bearing on the McCalmonts' "credit worthiness, credit

---

[1] This court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015). However, this court "need not accept as true allegations contradicting documents that are referenced in the complaint." *Id.* at 1008 (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)). Here, we may consider the McCalmonts' DU Findings Report, which was referenced in and attached to the complaint. The DU Findings Report does not make any recommendation regarding whether the lender should or should not originate a loan, nor any evaluation regarding the McCalmonts' creditworthiness.

[2] *See* 15 U.S.C. § 1681a(d) (defining "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a *consumer's* credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title" (emphasis added)).

1

standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1). Mem. Dispo. at 3–4. The majority's reading of the statute converts every bank or lender that states that it will not make or purchase a loan to a broker or lender, and gives reasons for its decision, into a "consumer reporting agency" that may be liable directly to the borrower.[3]

Second, the complaint does not raise a plausible inference that Fannie Mae failed to "follow reasonable procedures to assure maximum possible accuracy" of the information concerning the McCalmonts. *See* 15 U.S.C. § 1681e(b). As the majority explains, the complaint alleges that none of the McCalmonts' lenders reported that the McCalmonts had been through a foreclosure, that a previous short sale had been wrongly flagged by Fannie Mae as a foreclosure, and that the error was the result of the Desktop Underwriter system's inability to distinguish between foreclosures and short sales. Mem. Dispo. at 4. Those allegations raise a plausible

---

[3] The majority dismisses this concern because a bank or lender "cannot meet the definition of a 'consumer reporting agency' unless such bank or lender 'regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.'" Mem. Dispo. at 4, n.1. Of course, banks and lenders regularly engage in the practice of assembling or evaluating consumer credit information when they investigate loan applications sent them by brokers seeking financing for real estate sales. Under the majority's reading of the FCRA, banks and lenders who assemble or evaluate consumer credit information "for the purpose of furnishing consumer reports to third parties," (including, for example, brokers), become "consumer reporting agencies," even when the information furnished by the banks and lenders concerns only a prospective loan for purchase.

inference that Fannie Mae made a mistake when it identified the McCalmonts' short sale as a foreclosure. However, those allegations do not raise a plausible inference that the mistake was the result of "unreasonable procedures" employed by Fannie Mae. In fact, there are no allegations in the complaint regarding what procedures Fannie Mae did or did not follow. The majority carries the plaintiff's burden to raise a plausible inference that Fannie Mae failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the McCalmonts by treating allegations of Fannie Mae's mistake regarding the short sale as persuasive evidence of negligence. It thereby imports into the FCRA a *res ipsa loquitur* standard where no such standard exists. The complaint does not allege facts sufficient to raise a plausible inference that Fannie Mae failed to follow reasonable procedures to assure maximum possible accuracy of the DU Findings Report. Therefore, the judgment of the district court dismissing the McCalmonts' complaint should be affirmed.